**Ron STREETER et al., Plaintiffs,**

**Ron Streeter and Dwight Lindsey, Plaintiffs-Appellees,**

v.

**Joseph S. HOPPER, Warden, Georgia State Prison, et al., Defendants-Appellants.**

**No. 79–2355.**

United States Court of Appeals, Fifth Circuit.

June 13, 1980.

---

Harrison Kohler, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellants.

Ralph Goldberg, Thomas McKee West, Atlanta, Ga., for plaintiffs-appellees.

Before INGRAHAM, RONEY and THOMAS A. CLARK, Circuit Judges.

RONEY, Circuit Judge:

Finding that the lives and safety of plaintiffs Ron Streeter and Dwight Lindsey were endangered by their incarceration in the Georgia State Prison at Reidsville, the district court ordered their transfer to an institution in which their safety could be assured. Defendant state prison officials appeal, contending first that the complaint should have been dismissed for failure to exhaust state administrative and judicial remedies, and second that the district court's finding that plaintiffs' lives and safety were endangered is clearly erroneous. We affirm.

The origins of this case are traceable to early 1978, when escalating racial tensions at Reidsville culminated in violence and the death of one prisoner. A group of inmates formed the Inmate Unity Committee (IUC) in March 1978 to promote racial harmony and negotiate with the warden for certain reforms. Streeter and Lindsey were elected by the IUC to a nine-member central committee chosen to conduct those negotiations.

The IUC was officially recognized by the warden but negotiations between him and the committee broke down in April. On April 23, 1978, the prison chapel, canning plant and industrial area were set on fire. Having received information that Streeter, Lindsey, Gary Krist, James Lucear and James Watson, all members of the IUC central committee, had advocated the setting of those fires, prison officials ordered them placed in administrative segregation.

These five prisoners filed a complaint in federal district court on May 5, 1978. Although styled as a petition for writ of habeas corpus, the complaint sought injunctive relief under 42 U.S.C.A. § 1983, the expungement of the episode from their records, as well as the issuance of a writ. The essence of the allegations in the complaint was that plaintiffs were denied due process when placed in administrative segregation. No allegation suggested that the life or safety of any plaintiff was endangered by confinement at Reidsville.

Further investigation exonerated Lucear and Watson and led to their release from administrative segregation. They were dismissed as plaintiffs in this case. Krist withdrew by stipulation before any hearings were held.

The issue of the safety of Streeter and Lindsey at Reidsville did not enter this case until November 1978. Plaintiffs had moved for partial summary judgment on their claim that they were confined in administrative segregation without due process. In response, defendants asserted that because plaintiffs had, in an October 19, 1978 classification hearing, refused to leave administrative segregation and return to the prison's general population, they lacked standing to challenge their confinement in administrative segregation.

■ Plaintiffs replied that their lives and safety were in danger in Reidsville's general population, that they were constitutionally entitled to be imprisoned safely, and that the district court should remedy their unsafe imprisonment by ordering them placed in another institution. Thereafter, the parties treated plaintiffs' alleged endangerment as a distinct issue. Indeed, both evidentiary hearings in the record focused on that issue. In view of the parties' apparent consent to adjudication of this Eighth Amendment claim, we attach no significance to plaintiffs' failure to amend their complaint to reflect the claim. *See Proctor v. Gissendaner*, 579 F.2d 876, 885 n. 20 (5th Cir. 1978); Fed.R.Civ.P. 15(b).

■ Streeter has been released from prison since his transfer from Reidsville, mooting this appeal as to him. Lindsey is presently incarcerated in the Macon Correctional Center, and the district court's injunction against his return to Reidsville without his consent or a court order remains in force.

## EXHAUSTION OF REMEDIES

Defendants contend plaintiffs' complaint was a petition for habeas corpus seeking release from administrative segregation

which should have been dismissed for plaintiffs' failure to exhaust state judicial remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Krist v. Ricketts*, 504 F.2d 887 (5th Cir. 1974); 28 U.S.C.A. § 2254(b). Plaintiffs argue, on the other hand, that they were granted relief on a claim under 42 U.S.C.A. § 1983, which requires no exhaustion of state judicial remedies.

As this Court has recently stated,

The rule . . . is that any challenge to the *fact* or *duration* of a prisoner's confinement is properly treated as a habeas corpus matter, whereas challenges to *conditions* of confinement may proceed under § 1983 without any requirement of exhaustion of state judicial remedies. Courts should be governed by these classifications regardless of the relief sought or the label placed by the petitioner upon such action.

*Johnson v. Hardy*, 601 F.2d 172, 174 (5th Cir. 1979).

█ Plaintiffs' original complaint, seeking release from the imposition of administrative segregation without due process, would be appropriately treated as a habeas corpus petition, requiring exhaustion of state judicial remedies. *Krist v. Ricketts*, 504 F.2d 887; 28 U.S.C.A. § 2254(b). The administrative segregation issue is not, however, before this Court. The district court instead adjudicated plaintiffs' challenge under the Eighth Amendment to the conditions of their confinement at Reidsville prison. Such a challenge is within the ambit of § 1983 and exhaustion of state judicial remedies is not required. *Watson v. Briscoe*, 554 F.2d 650, 652 (5th Cir. 1977); *Meadows v. Evans*, 529 F.2d 385, 386 (5th Cir. 1976), *aff'd en banc*, 550 F.2d 345, *cert. denied*, 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977).

█ We need not decide to what extent exhaustion of state administrative remedies, as distinct from exhaustion of state judicial remedies, must precede an adjudication of plaintiffs' § 1983 suit. *See Patsy v. Florida International University*, 612 F.2d 946 (5th Cir.), *rehearing en banc granted*, 617 F.2d 442 (5th Cir. 1980). Defendants' counsel conceded at oral argument that a state investigation of a prison officer's alleged threat on plaintiffs' lives, initiated upon a complaint by Streeter, effectively exhausted any administrative remedies available to plaintiffs.

### FINDING OF ENDANGERMENT

Defendants contend the district court is clearly erroneous in its finding

that the two Petitioners' lives and safety are in danger where they are presently being incarcerated, and further that because of the particular and unusual facts of their situation the safety of these two prisoners cannot be adequately guaranteed while retained at the Reidsville facility.

Upon a review of the record, this Court is not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Acacia Mutual Life Insurance Co. v. Perimeter Park Investment Associates, Ltd.*, 616 F.2d 150, 151 (5th Cir. 1980).

█ Courts should proceed cautiously in cases of this kind, to prevent courtroom magnification of the general dangers inherent in prison life from precipitating unnecessary judicial interference in the operation of state prisons. The evidence relied on by the district court, however, demonstrates plaintiffs' exposure to conditions considerably more dangerous than those normal in prison life. *Cf. Cowart v. United States*, 617 F.2d 112, 115–16 (5th Cir. 1980) (Government tort liability for prisoner injury depends on reasonableness of risk to which prisoner was exposed).

Plaintiffs testified that a prison officer with a reputation among inmates for violence came to administrative segregation when it was improper for him to be there and, in a conversation with Gary Krist, threatened the lives of Streeter, Lindsey and Krist. Although there was conflicting testimony as to the conversation which occurred, the credibility issue was apparently

resolved in favor of plaintiffs by the district court.

Plaintiffs also claimed to have received death threats from other, unnamed officers and inmates. They described certain areas of the prison in which other inmates had "run around" privileges enabling them to carry out such death threats.

The district court could properly weigh plaintiffs' testimony in light of the atmosphere of racial hostility accompanying the formation and collapse of the IUC, of which Streeter and Lindsey were integral members. The IUC had apparently aroused enmity both among prison officers and among inmates who believed the committee members had "sold out."

 The state has a responsibility under the Eighth Amendment to protect the safety of its prisoners. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977); *Gates v. Collier*, 501 F.2d 1291, 1308–09 (5th Cir. 1974); *Finney v. Arkansas Board of Correction*, 505 F.2d 194, 201 (8th Cir. 1974), *aff'd sub nom. Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973); *see Rudolph v. Locke*, 594 F.2d 1076, 1078 (5th Cir. 1979). Having found plaintiffs' lives in danger, the district court fashioned a remedy which left prison officials considerable latitude for compliance. *See Gates v. Collier*, 501 F.2d at 1309–10. Plaintiffs were ordered removed from Reidsville and placed in an institution selected by defendants, where their safety could be assured.

Moreover, the express terms of the order permit Lindsey to be transferred back to Reidsville either upon his consent or after a hearing before the district court at the request of defendants. The availability of such a hearing affords defendants an opportunity to show that the conditions of endangerment have been eliminated, enabling a vacation of the injunction.

AFFIRMED.